Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

JESSE ANTONIO SOTO,

Defendant.

No: 2:22-CR-0036-RMP-1

United States' Response to Defendant's Motions to Suppress

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, submits the following Response to Defendant's Motion to Suppress, filed at ECF Nos. 41. The motion should be denied because the officers conducted a proper *Terry* stop and frisk, the officers had probable cause to arrest the Defendant for possession of a stolen motor vehicle, the officer had authority to conduct a search incident to arrest, and the evidence would have been located pursuant to inevitable discovery and independent source doctrine.

//

## I. **Introduction**

On March 15, 2022, Defendant was charged by way of indictment with one count of Possession with Intent to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1)(b)(1)(A)(viii), and one count of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). ECF No. 1.

On February 6, 2023, Defendant filed one motion to suppress evidence. ECF Nos. 41.[1] Defendant argues a number of basis for suppress, all of which fail: (1) officers improperly prolonged Defendant's *Terry* detention; (2) officers conducted an improper *Terry* frisk; (3) officers improperly seized Defendant's property; (4) officers lacked probable cause to arrest Defendant for possession of a stolen motor vehicle; and (5) officers did not properly search the Defendant's property pursuant to a search incident to arrest. The Defendant does not address inevitable discovery or independent source doctrine in its motion to suppress.

To the contrary, the officers properly relied upon the fact that the vehicle was reported and confirmed stolen and therefore had a reasonable suspicion to conduct a *Terry* stop and frisk of its occupants. Furthermore, the officers were permitted to

---

[1] Defendant contemporaneously filed a motion to continue which was later granted by the Court. Pursuant to the Court's order, the United States' response to motions are due April 17, 2023.

conduct an investigation, which in this case provided additional facts the officers relied upon in arresting Defendant. Pursuant to Defendant's arrest, the officers were permitted to conduct a search incident to arrest. Furthermore, had the officers not conducted a search incident to arrest, the evidence would inevitably been located at the jail upon booking.

Moreover, Defendant was on Washington State Department of Correction supervision at the time of the stop and therefore subject to DOC jurisdiction and detention. Accordingly, the evidence would inevitably been discovered pursuant to the processing of the Defendant at booking on the DOC detention.

Based upon a totality of the evidence and circumstances more fully briefed below, there is no basis for suppression of the evidence in this case.

## II. The Facts of the Instant Case[2][3]

---

[2] The United States offers this as a summary only prepared by the assigned AUSA not the potential witnesses involved. Although the summary was prepared from the discovery materials, the United States defers to the exhibits, which include the incident reports, recordings and upcoming testimony as the best source as to the factual background. All exhibits have previously been provided in discovery.

[3] Defendant filed Exhibits A through F attached to ECF No. 41, for purpose of efficiency, the United States will reference these Exhibits but will not be filing the same exhibits.

On December 26, 2021, at approximately 12:45a.m., Officer Miguel Ruiz of the Wenatchee Police Department was on routine patrol in the City of Wenatchee. During this patrol, Officer Ruiz observed a vehicle matching the description of a vehicle he previously knew had been reported stolen at the Mission St. Chevron gas station. While driving past the gas station, Officer Ruiz observed to male subjects walking towards the stolen vehicle. Officer Ruiz made a u-turn and entered the gas stations lot, initiating a stop of the stolen vehicle. At this time, Officer Ruiz observed one male subject, later identified as Defendant Jesse Soto, in the front passenger seat. Officer Ruiz further observed the other male subject standing outside the stolen vehicle behind the open driver's door. Officer Ruiz ordered both individuals to show him their hands and to remain where they were. The male subject at the driver's door proceeded to look around and then fled on foot. Officer Ruiz, having no back up at this time, remained at the vehicle. Officer Ruiz observed Defendant attempt to open the passenger side door, as if he was also going to attempt to flee. Officer Ruiz unholstered his service pistol and order Defendant to remain in the stolen vehicle. Officer Ruiz further noted, while waiting for backup officers, Defendant initially made furtive movements and appeared to be reaching near his waist area. Officer Ruiz "[I]n fear of him reaching for an unknown weapon…told the [Defendant] to place his hands out in front of him." ECF No. 41, Exhibit A-4.

Upon the arrival of backup officers, Officer Ruiz had Defendant exit the stolen vehicle and walk backwards to Sgt. Cory Bernaiche, who was waiting to detain

Defendant. Once Defendant made contact with Sgt. Bernaiche, Sgt. Bernaiche conducted a *Terry* frisk of Defendant, placed Defendant in handcuffs, and seated him in a patrol car. Prior to placing Defendant in the back of the patrol car, Sgt. Bernaiche removed a small green camouflage "Fanny Pack" (hereinafter "pack") that was strapped across Defendant's chest.

Once Sgt. Bernaiche placed Defendant in the patrol vehicle, Defendant was advised of his *Miranda* warnings. Defendant identified himself as Jesse Soto. Subsequent information from dispatch confirmed Defendant was a previously convicted felon. Defendant agreed to answer some questions from the officers. Defendant confirmed he was on active DOC supervision. Defendant was asked about the other male subject who was driving the vehicle. Defendant stated he believed his name was "Rex" and that he was a friend of a friend. Defendant stated his friend called this individual to give him a ride to this gas station but he had never met this person before. Defendant refused to provide the name of the friend that he claimed arranged the ride for him. When asked about why they came to this gas station rather than the one that was much closer to their origin, Defendant claimed he just liked the Chevron and that his cousin's family owned it.

Officer Ruiz and Sgt. Bernaiche then proceeded to attempt contact with Defendant's DOC officer as well as make contact with the registered owner of the stolen vehicle. Officer Ruiz successfully made contact with the registered owner, who advised he was *en* route to the location to recover the vehicle. The registered owner

also indicated his consent for the search of the stolen vehicle. While the officers waited for the arrival of the registered owner, Officer Ruiz attempted to identify the other unknown male subject through running computer checks as well as re-engaging with Defendant to provide additional information. However, Officer Ruiz was unsuccessful in positively identifying the driver.

At approximately 1:47a.m., Officer Ruiz advised dispatch that the pack associated with Defendant contained a firearm. Officer Ruiz reported, and is expected to testify, that he believed it was a firearm because at the time he picked up the pack, it felt heavy and that when he grabbed the pack he naturally felt what, based upon his training and experience, felt like a pistol. At approximately 1:49a.m., Officer Ruiz contacted Defendant in the patrol vehicle. Defendant asked Officer Ruiz if he was being violated by DOC.[4] Officer Ruiz asked the Defendant to hold on so that he could hear him better. Officer Ruiz indicated that Sgt. Bernaiche was on the phone with DOC. Officer Ruiz advised Defendant that he suspected there was a firearm in the pack.[5] Defendant repeatedly denied there was a firearm, claiming his phone was in the pack. Defendant proceeded to tell Officer Ruiz on multiple occasions to "just open it up." Officer Ruiz, rather than simply opening the pack, showed Defendant the pack, asked Defendant to confirm it was his pack, and asked if Defendant provided consent to search the pack.[6] Defendant confirmed it was his pack and refused consent

---

[4] Non-Scannable Exhibit A, Officer Ruiz Video 2, at 1:28 – 4:10.
[5] Id.
[6] Id.

(even though he previously encouraged Officer Ruiz to simply open it).[7] Approximately four minutes passed from the conclusion of this interaction to when Officer Ruiz, at approximately 1:55a.m., placed Defendant under arrest. Pursuant to a search incident to arrest, Officer Ruiz searched the pack and located approximately 172.6 gross grams of methamphetamine, approximately 517 pills of suspected fentanyl, and a Walther P22 pistol bearing serial number L378893.

Officer Ruiz proceeded to search the stolen vehicle which resulted in the location of a scale with drug residue. During the search, Officer Ruiz received a phone call from DOC Supervisor Tim Logan who approved the detention of Defendant and indicated a detainer would be sent to the jail.

At approximately 2:15a.m., the incident concluded with the release of the stolen vehicle to the registered owner. Defendant was subsequently transferred to the County jail where he was booked and the evidence was placed on police property.

## III. Argument

### A. The *Terry* detention and frisk of Defendant was lawful and not unreasonable.

#### i. The initial *Terry* detention was lawful and is not contested by Defendant.

The Fourth Amendment permits brief investigative stops—such as the attempt to contact the defendant in the location of the reported incident—when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 134 S.Ct.

---

[7] Id.

1683, 1687–92 (2014), citing, *United States v. Cortez*, 449 U.S. 411, 417–418 (1981); see also *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). The "reasonable suspicion" necessary to justify such a stop "is dependent upon both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990). The standard takes into account "the totality of the circumstances—the whole picture." *Cortez,* supra, at 417. Although a mere "'hunch'" does not create reasonable suspicion, *Terry,* supra, at 27, the level of suspicion the standard requires is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less" than is necessary for probable cause, *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Defendant concedes the initial detention of Defendant was lawful. *See* ECF No. 41, pg. 18, ln. 1-2. Therefore, the Court does not need to address the legality of the *Terry* stop at the outset.

ii. The *Terry* frisk of Defendant after he exited the vehicle was lawful and supported by reasonable and articulable suspicion.

Following that, the officers acted reasonably when they conducted an initial frisk of Defendant upon his removal from the vehicle. In *Arizona v. Johnson*, 555 U.S. 323, 326 (2009), the Court determined "police officers [have the authority] to 'stop and frisk' a passenger in a motor vehicle temporarily seized upon police detection for a traffic infraction." "[When] a motor vehicle has been lawfully detained . . . officers may order the driver to get out of the vehicle without violating the Fourth Amendment." *Johnson*, 555 U.S. at 331 (citing *Pennsylvania v. Mimms*, 434 U.S. 106,

111 (1977)). “Once [the driver is] outside the vehicle, [the driver] may be patted down for weapons if the officer reasonably concludes that the driver ‘might be armed and presently dangerous.’” *Id.* The Court in *Maryland v. Wilson*, 519 U.S. 408, 415 (1997), extended the *Mimms* rule to passengers as well as drivers. *See Mimms*, 434 U.S. at 111. Shortly after *Wilson*, the Court held a passenger is seized just as the driver is, “from the moment [a car stopped by the police comes] to halt on the side of the road.” *Johnson*, 555 U.S. at 332 (citing *Brendlin v. California*, 551 U.S. 249, 263 (2007)).

In *Johnson*, the Supreme Court held an officer, who makes a lawful traffic stop, may conduct a pat down search of any occupant in the vehicle, regardless of whether there is reason to believe the occupant is involved in criminal activity. *See Id.* at 327. Explicit in its holding, the Court stated police officers meet the first condition of *Terry* whenever officers lawfully make a traffic stop. *Id.* There, officers pulled over a vehicle for suspended registration and an insurance violation. *Id.* The Supreme Court held that satisfied the definition of a lawful traffic stop. *Id.*

Next, in order to satisfy the second condition of *Terry*, the Supreme Court held “police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.” *Id.* The police officers in *Johnson*, satisfied that standard. *See Id.* There, police officers pulled over a vehicle for a lawful traffic stop but did not have any reason to suspect the passengers were involved in criminal activity. *Id.* However, as the officer approached the vehicle, the defendant’s clothing, conduct, and

his possession of a police scanner "cause[d for] concern." *Id.* at 328. After a series of questions and based on the officer's personal experience, she suspected the defendant had a weapon on him. *Id.* When the defendant exited the vehicle, the officer "patted him down for officer safety" and found a handgun. *Id.; see also United States v. Gist-Davis*, 41 F.4th 259, 264 (C.A.4 (N.C.), 2022), quoting *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004) (existence of reasonable suspicion by considering the totality of the circumstances, "giving due weight to common sense judgments reached by officers in light of their experience and training.")

In addition, the Ninth Circuit, in *Vaughan*, considered whether police officers could temporarily detain and pat down passengers in a vehicle when officers initially pulled the vehicle over only to arrest the driver and a separate passenger on outstanding warrants. *United States v. Vaughan*, 718 F.2d 332 (9th Cir. 1983). The Ninth Circuit determined police officers had the right to briefly detain and search the Defendant while they searched his companions. *Id.* at 334 (citing *Michigan v. Summers*, 452 U.S. 692 (1981)). The court reasoned since Vaughan was a passenger in a vehicle that had two men with outstanding warrants, it was reasonable for police to briefly detain and pat him down as they uncovered evidence that may implicate Vaughan with the two men. *Id.* In support of this conclusion, the court explained, "One would expect that persons in a . . . car are there by invitation or consent;" therefore, it is "logical . . . to justify the detention . . . to ascertain if some connection exists between suspects." *Id.* at 336 n.6. Furthermore, the court held officers had a

right "to engage in a limited *Terry* 'stop and frisk' to determine that [the defendant] had no weapons that might endanger the officers." *Id.*

In the present case, police officers met the first condition of *Terry* when officers made a lawful traffic stop of the stolen vehicle. Moreover, police officers met the second condition of *Terry* since officers "harbor[ed] reasonable suspicion that the [Defendant was] armed and dangerous." *Johnson*, 555 U.S. at 327. Here, Officer Ruiz, and by extension Sgt. Bernaiche, had a reasonable, articulable suspicion Defendant was presently armed. First, the driver of the vehicle had fled leaving Defendant as the sole individual in the stolen vehicle. Second, as the driver fled, Officer Ruiz noted Defendant opened the door of the vehicle as if he was about to flee as well. Third, Officer Ruiz further noted Defendant while in the vehicle made furtive movements and began reaching in his waist area, resulting in Officer Ruiz ordering Defendant to stop moving and to show his hands. Officer Ruiz, based on his observations and his training and experience, reasonably believed Defendant may have been reaching for a weapon or some other implement. *See Id.* (the Court found the officer's experience with gang-members and the defendant's responses to her questions met the "reasonable suspicion" threshold). Fourth, the vehicle had not been cleared at the time of Defendant's detention and therefore, there could have been other individuals that could seek to harm the officers. Fifth, the officers were encountering Defendant during the middle of the night. Accordingly, based on the totality of the

circumstances, the officers were permitted to conduct a frisk of Defendant to ensure the officer's safety.

iii. The removal and separation of Defendant and the pack was reasonable and consistent with case precedent and procedure.

Defendant asserts Sgt. Bernaiche exceeded the scope of a *Terry* frisk by removing the pack that was across Defendant's chest. This argument fails and is inconsistent with case law and the circumstances during the course of this stop. As noted above, *Terry* permits the pat down of Defendant upon a reasonable suspicion a crime is afoot. Here there was at least one crime that was afoot, the unlawful possession of a stolen motor vehicle by Defendant and another unknown male subject. The physical scope of a *Terry* protective search is not limited to the detainee's person. *See Michigan v. Long*, 463 U.S. 1032, 1047-49 (1983). "Indeed, this court has upheld the protective search of a suspect's "fanny pack" during a traffic stop because "the police officers had a right to examine a hiding-place where a weapon could be concealed that the suspect could reach if he broke away from the officers." *United States v. Garcia*, 909 F.2d 389, 392 (9th Cir. 1990). Therefore, Sgt. Bernaiche initial frisk of Defendant, including the removal was not unreasonable and outside *Terry* because the officers were aware a crime was afoot and they had a reasonable belief Defendant was armed.

Moreover, during the course of a *Terry* stop, an officer is permitted to remove items that may contain weapons that could endanger the safety of the officers. An

officer may search personal property if there is a "legitimate concern for the officers' safety." *United States v. Maddox*, 614 F.3d 1046, 1048 (9th Cir. 2010) (citing *United States v. Turner*, 926 F.2d 883, 888 (9th Cir. 1991). Where an officer has a reasonable basis to believe a container holds a dangerous item, the officer is justified in securing it. *Maddox*, 1048-49; *see also Chadwick*, 433 U.S. 1, 15 n.9 (1977) ("[I]f officers have a reason to believe that luggage contains some immediately dangerous instrumentality, such as explosives, it would be foolhardy to transport it to the station house without opening the luggage and disarming the weapon."); *see also US v. Hernandez*, 2018 WL 11230470, *4 (Mar. 27, 2019) (in analyzing the search of a backpack defendant was holding at the time of *Terry* detention the Court noted "[n]othing in *Terry* or its progeny prevents an officer from searching inside a backpack for weapons during a *Terry* stop. To be sure, the search must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments. But a backpack can easily conceal weapons that pose a safety risk. The officers could therefore lawfully search it during the course of the stop.").

Here, the *Terry* stop was lawful and accordingly, based upon the observations of Officer Ruiz, a pat down of Defendant was further proper. The officer's actions in removing the pack were reasonable in order to remove Defendant's accessibility to a weapon. The officers, while following *Terry*, *Vaughan*, and *Hernandez*, could have searched the pack while it was on Defendant had they felt the pistol, they did not, they simply removed it to ensure their safety in the event the pack contained a firearm

(which it did). The removal of the pack during the *Terry* stop did not exceed the scope of *Terry*, nor did it venture into the type of impermissible intrusion that is not permitted.

B. The continued detention of Defendant was lawful and reasonable because it was supported by diligent investigative actions by the officers.

There is no "bright line" time limit on a lawful investigatory stop. *United States v. Sharpe*, 470 U.S. 675, 685 (1985). Rather, "we have emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *Id.* (citing *United States v. Hensley*, 469 U.S. 221, 228-229 (1985); *United States v. Place*, 462 U.S. 696, 703-704 (1983); *Michigan v. Summers*, 452 U.S. 692, 700, and n. 12 (1981)). In determining whether a detention is too long in duration to be justified as an investigatory stop, it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. *Id.* at 686 (citations omitted). A reviewing court should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing. *Id.*

In *Alexander v. County of Los Angeles*, 64 F.3d 1315 (9th Cir. 1995), a robbery took place in which shots had been fired. *Id.* at 1317. A description of the robbery suspect was provided to law enforcement. *Id.* About forty minutes after the robbery,

an officer observed two males in a suspicious vehicle. *Id.* The vehicle was stopped and surrounded by several police officers with their weapons drawn. *Id.* The males were handcuffed and detained in a patrol car while the police waited almost one hour for eyewitnesses to be brought to the scene. *Id.* The Ninth Circuit determined that the officers had reasonable suspicion to make the high-risk traffic stop. *Id.* at 1319. Furthermore, this court determined that the officers acted reasonably in ordering the males from their car at gunpoint. *Id.* Lastly, the Ninth Circuit concluded that "a reasonable officer could have believed that holding the suspects for witness identification was lawful under the circumstances." *Id.* at 1321.

In this case, the officers acted reasonably and with diligence. The initial stop occurred at approximately 12:55a.m. on December 26, 2021. Upon being detained, Defendant was placed in the back of a patrol vehicle and was advised of his *Miranda* warnings. Immediately following this, Officer Ruiz and another officer set out to try and locate the male driver that fled on foot. Sgt. Bernaiche remained with Defendant and asked Defendant questions. Defendant provided his name, which was subsequently run through dispatch. Defendant provided a statement as to where he was coming from and how he came to be at the Chevron in Wenatchee. As noted in the dashcam audio recordings, Sgt. Bernaiche was suspicious of Defendant's statement as it belied commonsense. Moreover, the officers learned Defendant, who admitted to such to Sgt. Bernaiche, was on DOC supervision. The officers tried on multiple occasions to reach Defendant's supervising DOC officer. The officers also

made contact with the registered owner of the vehicle and requested consent to search the vehicle. The registered owner further advised that he was *en* route to their location to identify items. The contact with the registered owner occurred at approximately 1:06a.m., at approximately 1:47a.m., the registered owner is observed at the Chevron station. It was not unreasonable for the officers to continue to detain Defendant until the search of the vehicle had been conducted in the presence of the owner to dispel any concerns of items that may be located in the stolen vehicle that were associated with Defendant, the fleeing driver, or that establish additional connections between Defendant and fleeing driver.

Accordingly, in light of the totality of the circumstances and the continuous on-going nature of the investigation, the officers detention of Defendant was reasonable.

C. The officers had probable cause to arrest Defendant for possession of a stolen motor vehicle and conduct a search incident to arrest of the pack that was on Defendant at the time of his initial detention.

Officer Ruiz had probable cause to arrest Defendant for possession of a stolen motor vehicle. Under Ninth Circuit case law, the Court will look to the totality of circumstances to determine if the arrest was supported by probable cause. In *Rohde v. City of Roseburg*, the Ninth Circuit held that a single stolen vehicle report is sufficient to arrest the driver of a stolen vehicle but not a passenger "absent some indication of a relationship more substantial than that of driver and passenger." *Rohde v. City of Roseburg*, 137 F.3d 1142, 1144-45 (9th Cir. 1998). Additionally, in *United States v. Ramirez*, a drug smuggling case, the Ninth Circuit held a passenger's mere knowledge

of contraband is insufficient to prove possession. However, the question presented to the Court here is not whether there was sufficient evidence to convict Defendant beyond a reasonable doubt of possession of a stolen motor vehicle. The question presented is whether there was sufficient evidence to establish the much lower standard of probable cause of some indication of a relationship beyond driver and passenger. As noted by the Ninth Circuit in *Buckner*, "[I]t is well established that a passenger may not be convicted unless there is evidence connecting him with the contraband, other than his presence in the vehicle…but that does not mean that police lack probable cause to arrest a passenger "as a probable party to the importation." *U.S. v. Buckner*, 179 F.3d 834, 839-40 (9th Cir. 1999), quoting *Bettis v. United States*, 408 F.2d 563, 567 (9th Cir. 1969); *see also Heiden*, 508 F.2d at 901 ("In the absence of the discovered key, the passenger doctrine might have precluded [Heiden's] conviction of the charges but that doctrine cannot invalidate his arrest.")

Here, Officer Ruiz had sufficient indicia of more than a mere driver/passenger relationship between the unknown male subject and Defendant. When considering the totality of the circumstances, Officer Ruiz was justified in arresting Defendant for possession of a stolen motor vehicle. At the time of the initial detention, the driver fled and Defendant appeared to be making an attempt to flee as well. When questioned by Sgt. Bernaiche, Defendant provided only the name of "Rex" for the driver and refused to provide the name of the individual Defendant claimed coordinated the ride for him (which had it been provided could have assisted law

enforcement in determining the credibility of Defendant's statements). Additionally, Defendant claimed they were coming from the casino to Wenatchee to buy drinks and cigarettes, which as Sgt. Bernaice pointed out would have been easily obtainable at the gas station closer to the casino where Defendant and driver were coming from. Moreover, Officer Ruiz considered the time of the stop and Defendant's status as a convicted felon currently on Department of Corrections supervision. All of these circumstances, including the fact Defendant was in a stolen vehicle at the time of the contact with law enforcement, gave rise to probable cause to arrest Defendant.

Accordingly, having probable cause to arrest Defendant, Officer Ruiz had the authority to conduct a search incident to arrest of the pack Defendant was wearing at the time of his detention. In *Turner*, the Ninth Circuit noted law enforcement may conducted a search incident to arrest of the "area within the arrestee's immediate control, 'that is the area from within which he might gain possession of a weapon or destructible evidence.'" *Turner*, 926 F.2d at 887. Additionally, the *Turner* court noted the search be conducted "about the same time as the arrest." *Id.* In determining whether the search of the room defendant was arrested in was proper, the Court considered whether the baggies of cocaine were in his immediate control. *Id.* at 88. The Court concluded they were because they were on the bed at the time defendant was arrested. *Id.* Next, the Court considered whether intervening events made the search unreasonable. *Id.* The Court concluded the removal of Defendant from the room and slight delay were reasonable. *Id.*

The Defendant argues the time between arrest and search was too attenuated, the Defendant was not near the pack to be a danger, and the events surrounding the arrest and search were unreasonable.

First, the search of the bag occurred immediately following Defendant's formal arrest. Notwithstanding the search occurring immediately following the arrest, the pack remained in the continuous control of law enforcement from the moment Defendant was detained until the search. A factor considered by the Court is whether the bag remained in uninterrupted custody of law enforcement. The Ninth Circuit previously held that the search of an item previously lawfully seized and searched could subsequently be searched so long as it remains in the legitimate uninterrupted possession of the police without a warrant. *See United States v. Burnette*, 698 F.2d 1038, 1049 (9th Cir. 1983); *c.f. United States v. Monclavo-Cruz*, 662 F.2d 1285 (9th Cir. 1981) (holding that a container not searched immediately but removed to a police station and searched later requires a warrant). While the United States maintains the pack was only removed and secured by Sgt. Bernaiche at the time of detention, assuming Defendant's argument that the bag was seized applied, *Burnette* gives support for the extension that law enforcement could subsequently search that bag incident to arrest because it was in the uninterrupted custody of the officers. *Id.*

Defendant's second and third arguments are essentially the same: because the pack was in law enforcement custody and the length of time between detention and search, there was no longer a danger. The law does not construe the search incident to

arrest exception to prohibit searches anytime an individual is in handcuffs or even removed from the scene. In fact, Ninth Circuit caselaw to the contrary remains binding precedent. In *United States v. Nohara*, the Ninth Circuit held the search of a suspect's bag while handcuffed was lawful as a search incident to arrest. *Nohara*, 3 F.3d 1239, 1243 (9th Cir. 1993); *see also*, *e.g.*, *United States v. Cook*, 2011 WL 6748517, at *5 (Dec. 22, 2011). Similarly, the District of Oregon held a search incident to arrest of luggage was lawful even though the defendant had been handcuffed and removed from the immediate area. *See United States v. Kowalczyk*, 2012 WL 3201975, at *17 (D. Or. Aug. 3, 2012); *c.f. United States v. Vasey*, 834 F.2d 782, 786087 (9th Cir. 1987) (search occurred thirty to forty-five minutes after the arrest, following several conversations with police, and no threat of firearms discussed). This precedent is justified because even if a defendant is handcuffed, law enforcement officers remain at risk. *See United States v. Shakir*, 616 F.3d 315, 320-21 (3d Cir. 2010). Here, while Defendant was detained in handcuffs, there remained a risk that the handcuffs could, and do at times, fail as well as the unknown male subject remaining at large. Moreover, while there was approximately 45 minutes between the initial detention and formal arrest of Defendant, there were other circumstances, including on-going investigation, another subject that was not apprehended, and concern for the presence of firearms. The actions of the officers in these circumstances were reasonable. Accordingly, the Court should deny Defendant's motion.

D. The inevitable discovery and independent source doctrines apply to the firearms and drugs located in Defendant's pack.

Assuming arguendo the search of the pack was not proper pursuant to search incident to arrest, the evidence still should not be suppressed because it would have inevitably been discovered at the time Defendant was booked into the jail.[8] Where evidence is discovered through unconstitutional means, the evidence remains admissible because it would ultimately have been discovered. *See Nix v. Williams*, 467 U.S. 431, 447-48 (1984), *United States v. Zapata*, 18 F.3d 971, 978-79 (1st Cir. 1994). The evidence in this case shows by a preponderance of the evidence that the firearm, methamphetamine, and pills would have been lawfully found during an inventory search at the jail. *See United States v. Mancera-Londono*, 912 F.2d 373, 375 (9th Cir. 1990); *see also South Dakota v. Opperman*, 428 U.S. 364, 372-75 (1976); *Colorado v. Bertine*, 479 U.S. 367, 374, n.6 (1987). In order for the inventory search exception to apply, the government "must have legitimate custody of the property to be inventoried, either as a result of lawful arrest or by some other method." *Mancera-Londono*, 912 F.2d at 376, quoting *United States v. Jenkins*, 876 F.2d 1085, 1089 (2d Cir. 1989). Additionally, an officer's mixed motive does not negate the validity of the inventory search. *United States v. Bowhay*, 992 F.2d 229, 231 (9th Cir. 1993).

---

[8] Defendant seemingly knew as much by stating to the officers that they were going to search the pack any way because he was going to jail.

In this case, Officer Ruiz had sufficient probable cause to arrest Defendant for possession of a stolen motor vehicle and book him into the county jail. Moreover, Defendant was also going to be booked for violations of his community custody conditions as indicated by DOC Supervisor Tim Long to Officer Ruiz. As such, the personal items that were associated with Defendant would have been transferred with him to the jail and would have been inventoried. Accordingly, the firearm, methamphetamine, and pills would have been located during the course of that inventory and would have been inevitably discovered independent of the *Terry* stop or search incident to arrest.

## IV. CONCLUSION

Upon a review of the totality of the circumstances before the court, the officer's actions were both reasonable and lawful. These facts do not run a foul of the principles of the Fourth Amendment and affirm that the officers followed applicable law and acted in good faith. Respectfully, Defendant's motions to suppress evidence should be denied.

DATED this 17th day of April 2023.

Vanessa R. Waldref
United States Attorney

*s/ Patrick J. Cashman*
Patrick J. Cashman
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the counsel of record, Lorinda Youngcourt.

*s/ Patrick J. Cashman*
Patrick J. Cashman
Assistant United States Attorney