FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 10, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESSE ANTONIO SOTO,<br><br>Defendant. | NO: 2:22-CR-36-RMP-1<br><br>ORDER DENYING MOTION TO SUPPRESS |

BEFORE THE COURT is Defendant Jesse Antonio Soto's Motion to Suppress, ECF No. 41. The Government opposed in its response, ECF No. 54, and Defendant replied, ECF No. 64. Defendant is charged with Possession with Intent to Distribute 50 Grams of Actual (Pure) Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), and Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). ECF No. 1. Defendant seeks to suppress all evidence obtained as a result of law enforcement's search of his fanny pack and person on December 26, 2021. ECF No. 41 at 2.

ORDER DENYING MOTION TO SUPPRESS ~ 1

The Court heard oral argument on the motion on June 16, 2023. Defendant, who is not in custody of the U.S. Marshal, was present and represented by Assistant Federal Defender Lorinda M. Youngcourt. Assistant United States Attorney Patrick J. Cashman appeared on behalf of the Government.

The Court heard testimony from Wenatchee Police Officer Miguel Ruiz, Wenatchee Police Sergeant Cory Bernaiche, and Wenatchee Police Officer Michael Ballard. The Court admitted exhibits and heard arguments from counsel. Having reviewed the parties' filings and exhibits, heard the argument and testimony presented at the suppression hearing, and reviewed the relevant law, the Court is fully informed.

## BACKGROUND

Defendant's federal charges stem from his detention and arrest in the early morning hours of December 26, 2021. *See* ECF No. 41-1 at 1. The following information is drawn from the exhibits filed in this case, which include law enforcement incident reports and dash cam video recordings. *See* Defendant's Exhibits A-F, attached to ECF No. 41 as ECF Nos. 41-1 through 41-6; *see also* the Government's non-scannable Exhibit A, filed as ECF No. 56.

At approximately 12:45 a.m. on December 26, 2021, Wenatchee Police Officer Miguel Ruiz was working as a uniformed patrol officer in the area of South Mission Street and Ferry Street in Wenatchee, Washington. ECF No. 41-1 at 3. As he drove past a Chevron gas station, he observed a parked gold Audi A6 that he knew had

been reported stolen earlier that week. *Id.* He also observed Defendant and another man walking towards the stolen Audi. *Id.*

Officer Ruiz turned his patrol car around to contact the stolen vehicle. *Id.* Upon Officer Ruiz's arrival at the Chevron, Defendant had entered the Audi and was seated in the front passenger's seat. *Id.* at 3, 4. The second man walked towards the door on the driver's side, as if he were going to enter the vehicle. *Id.* at 3. Officer Ruiz activated the emergency lights on his patrol vehicle, exited his vehicle, and told the men to show their hands and not move, as they were in a stolen vehicle. *Id.* The man who had been approaching the driver's side door fled on foot through the gas station parking lot. *Id.* Officer Ruiz remained at the scene. *Id.*

Defendant, still seated in the stolen Audi, attempted to exit the vehicle as if he also intended to flee. *Id.* at 4. Officer Ruiz drew his service pistol and ordered Defendant to stay in the vehicle until other officers arrived. *Id.* Because Defendant kept moving and reaching near his waist, Officer Ruiz feared that he was reaching for a weapon. *Id.* Officer Ruiz ordered Defendant to place his hands in front of him, and then repositioned himself so that he could see Defendant's hands. *Id.*

Once other officers arrived, Officer Ruiz ordered Defendant out of the Audi and directed him to walk backwards towards Officer Ruiz's patrol car. *Id.* Wenatchee Police Sergeant Cory Bernaiche handcuffed Defendant and frisked him for weapons. ECF No. 41-4 at 1. As he frisked Defendant, Sergeant Bernaiche removed the fanny pack that Defendant wore around his torso and placed it on the

ORDER DENYING MOTION TO SUPPRESS ~ 3

hood of the patrol car without opening the fanny pack. *Id.* at 2. Sergeant Bernaiche testified that he did not feel the fanny pack when he removed it from Defendant and that he only unclipped and held the fanny pack's straps.

Sergeant Bernaiche placed Defendant in the backseat of Officer Ruiz's patrol car and advised Defendant of his *Miranda*[1] rights. ECF No. 56, Officer Ruiz Video 1, at 9:57 – 10:25. Defendant denied knowing that the car was stolen. *Id.* at 10:26 – 15:35. Defendant told Sergeant Bernaiche that he had been at the Clearwater Casino in East Wenatchee before the other man picked him up to take him to the Chevron gas station in Wenatchee to buy cigarettes and something to drink. *Id.* Defendant stated that he did not know the other man's name but that it might be "Rex," and that they had met for the first time that night through a friend of Defendant's, whom Defendant refused to name. *Id.* Sergeant Bernaiche asked Defendant why they came to that particular Chevron, given that there were other, closer gas stations to the casino in East Wenatchee. *Id.* Defendant responded that he just "liked coming" to that Chevron and that his cousin's family owned it. *Id.*

Sergeant Bernaiche learned from dispatch that Defendant was a previously convicted felon who was active on Washington State Department of Corrections ("DOC") supervision. ECF No. 41-1 at 4. When asked if his restrictions prohibited

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

ORDER DENYING MOTION TO SUPPRESS ~ 4

1 the consumption of alcohol or drug use, Defendant answered Sergeant Bernaiche in
2 the affirmative.[2] *Id.*

3     Officer Ruiz and Sergeant Bernaiche then attempted to contact both DOC and
4 the registered owner of the stolen vehicle. *Id.* Officer Ruiz successfully contacted
5 the registered owner, who arrived at the Chevron shortly thereafter and gave his
6 consent for the search of his vehicle. *Id.* at 4-5.

7     Officer Ruiz testified that after the registered owner arrived and the vehicle
8 was searched, he decided to move Defendant's fanny pack from its position on the
9 hood of the patrol car because he believed that the fanny pack might fall. When
10 Officer Ruiz gathered the fanny pack, he felt what he believed, based on his training
11 and experience, to be a firearm inside. ECF No. 41-1 at 5. Officer Ruiz asked
12 Defendant if there was anything illegal inside the bag. ECF No. 56, Officer Ruiz
13 Video 2, at 1:28 – 4:10. Defendant stated that only cigarettes and his phone were
14 inside, repeatedly denying that a firearm was inside, and then he told Officer Ruiz to
15 "just open" the fanny pack. *Id.* Officer Ruiz asked Defendant to confirm that it
16 belonged to him and asked Defendant if he consented to the search of the pack. *Id.*

---

[2] Contrary to Defendant's statement, Defendant's community custody conditions do not prohibit the consumption or possession of alcohol. ECF No. 41-5 at 1. The conditions do, however, prohibit the use or possession of controlled substances. *Id.*

ORDER DENYING MOTION TO SUPPRESS ~ 5

1   At that point, Defendant confirmed that the fanny pack belonged to him, but declined
2   to consent to its search.  *Id.*
3       Officer Ruiz arrested Defendant for possession of a stolen vehicle.  ECF No.
4   41-1 at 5.  Upon a search of Defendant's fanny pack, Officer Ruiz located a firearm,
5   172.6 grams of methamphetamine, and 517 fentanyl pills.  *Id.*  A search of
6   Defendant's person incident to arrest resulted in Officer Ruiz locating bills
7   amounting to $1,335.00.  *Id.*  In the present motion, Defendant seeks to suppress the
8   evidence recovered from his fanny pack and his person.

## LEGAL STANDARDS

10   The Fourth Amendment prohibits "unreasonable searches and seizures" by the
11   Government.  U.S. Const. amend. IV.  There are two types of police seizures under
12   the Fourth Amendment: *Terry* stops and full-blown arrests.  *See Allen v. City of*
13   *Portland*, 73 F.3d 232, 235 (9th Cir. 1995).

**Terry Stop & Frisk**

15   Under *Terry v. Ohio*, 392 U.S. 1 (1968), police officers may conduct a brief
16   investigatory stop of an individual when officers have reasonable suspicion that the
17   "person apprehended is committing or has committed a criminal offense."  *Reynaga*
18   *Hernandez v. Skinner* 969 F.3d 930, 937 (9th Cir. 2020) (citing *Arizona v. Johnson*,
19   555 U.S. 323, 326 (2009)).  Courts must "look at the 'totality of the circumstances' of
20   each case to see whether the detaining officer has a 'particularized and objective

ORDER DENYING MOTION TO SUPPRESS ~ 6

basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

During a *Terry* stop, if the officer justifiably believes that the individual "is armed and presently dangerous to the officer or others," the officer may conduct a patdown search "to determine whether the person is in fact carrying a weapon." *Terry*, 392 U.S. at 24. The officer also may conduct a protective search under *Terry* when the officer possesses a reasonable belief that the suspect poses a danger. *Michigan v. Long*, 463 U.S. 1032, 1048-49 (1983). The physical scope of a *Terry* protective search is not limited to the detainee's person. *See id.; see also United States v. Garcia*, 909 F.2d 389, 392 (9th Cir. 1990) (upholding the protective search of a suspect's fanny pack during a traffic stop because a weapon could be concealed inside). Furthermore, the officer may briefly seize personal property for investigative purposes "on the basis of reasonable, articulable suspicion, premised on objective facts," that the property "contains contraband or evidence of a crime." *United States v. Place*, 462 U.S. 696, 702 (1983); *id.* at 706.

Although the Supreme Court has rejected a bright-line temporal rule for the duration of a *Terry* stop, "the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion." *Place*, 462 U.S. at 709. The relevant inquiry is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during

ORDER DENYING MOTION TO SUPPRESS ~ 7

which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686.  "A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Id.*

**Probable Cause**

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *United States v. Watson*, 423 U.S. 411, 417-24 (1976); *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)).  In determining the existence of probable cause, courts look to "the totality of the circumstances known to the arresting officers [to determine if] a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)).

"Because the probable cause standard is objective, probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest." *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) (citing *Devenpeck*, 543 U.S. at 153-55)).

/ / /

ORDER DENYING MOTION TO SUPPRESS ~ 8

**Search Incident to Arrest**

"A search incident to lawful arrest is one of the 'few specifically established and well-delineated exceptions' to the warrant requirement of the Fourth Amendment" and "is conducted for the twin purposes of finding weapons the arrestee might use, or evidence the arrestee might conceal or destroy." *United States v. Maddox*, 614 F.3d 1046, 1048 (9th Cir. 2010) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967); *Chimel v. California*, 395 U.S. 752, 762-63 (1969)).  A search incident to arrest "is not limited to the simple pat-down of the suspect and can 'involve a relatively extensive exploration' of the areas within the arrestee's immediate control," including "the arrestee's person and the inside pockets of the arrestee's clothing." *United States v. Williams*, 846 F.3d 303, 312 (9th Cir. 2016) (citing *United States v. Robinson*, 414 U.S. 218, 227 (1973)).

**Inevitable Discovery**

When a warrantless arrest is not supported by probable cause, the evidence gathered after the arrest still may be admissible if it would have been discovered even without the unconstitutional source. *Utah v. Strieff*, 579 U.S. 232 (2016).  If the Government establishes by a preponderance that the evidence ultimately or inevitably would have been discovered by lawful means, then the exclusionary rule's rationale of deterring police error or misconduct "has so little basis that the evidence should be received." *Nix v. Williams*, 467 U.S. 431, 444 (1984).

/ / /

**DISCUSSION**

***Terry* Stop & Frisk**

While Defendant does not contest the legality of his initial detention, he argues that the duration of the *Terry* stop was unreasonable, and that Sergeant Bernaiche exceeded the scope of a valid *Terry* frisk and seizure. ECF No. 41 at 18-23. The Court considers each of these arguments in turn.

*Duration*

Defendant contends that the time between the securing of the scene and his arrest was unnecessarily long and thus constituted an unreasonable *Terry* seizure of his person. ECF No. 41 at 18-19. Defendant argues that while the police initially investigated with diligence after the other suspect fled, they did nothing for nearly 40 minutes besides attempt to call DOC. *Id.* at 19. This needlessly prolonged timeframe, Defendant asserts, was unconstitutional. *Id.* at 16.

The Court agrees with the Government that Defendant's continued detention was reasonable because it was supported by the officers' diligent investigative actions. *See* ECF No. 54 at 14. The incident reports, dashcam videos, and testimony demonstrate that the officers actively pursued the investigation notwithstanding the rapidly developing scene. *See* ECF Nos. 41-1, 41-4, and 56. Once Defendant was detained, Officers Ruiz and Ballard verified no one else was inside the stolen vehicle and then began to search for the suspect who fled. ECF No. 41-1 at 4. Sergeant Bernaiche questioned Defendant about his relationship with the driver and his

ORDER DENYING MOTION TO SUPPRESS ~ 10

reasons for driving to the Chevron. *Id.* The officers communicated with dispatch and made multiple calls to DOC. *Id.* They also coordinated the advisement and arrival of the stolen vehicle's registered owner, who drove to the scene along icy roads in the early hours the day after Christmas and assisted the officers in verifying whether items inside the vehicle belonged to him. *See id.* at 4-5. Additionally, Officer Ruiz testified that during the 40 minutes where his dashcam was turned off, he was engaged in discussions with Defendant in an attempt to obtain his cooperation. In sum, the officers diligently pursued the investigation by means that were "likely to confirm or dispel their suspicions quickly," during which time it was reasonable to keep Defendant detained. *See United States v. Sharpe*, 470 U.S. 675, 686 (1985).

*Validity of* Terry *Frisk and Seizure*

Defendant makes three challenges to the validity of his *Terry* frisk and seizure of his fanny pack.[3] ECF No. 41 at 20-22. First, he asserts that Sergeant Bernaiche's

---

[3] Defendant also challenges the validity of the *Terry* frisk that resulted in the removal of an unopened alcoholic beverage from his person and the constitutionality of its warrantless seizure. ECF No. 41 at 21-23. The Government did not respond to these arguments. *See* ECF No. 54. Defendant chose not to raise the issue in his reply, although he explicitly stated that he did not intend to waive it by doing so. *See* ECF No. 64 at 2 n.1. Moreover, neither the parties nor the witnesses discussed the alcoholic beverage at oral argument. Finding the issue to be insufficiently briefed and noting the extenuated connection between possessing the alcoholic beverage and the two charged offenses of possession with intent to distribute methamphetamine and felon in possession of a firearm, the Court declines to analyze the issue at this time, although the possession of the alcoholic beverage by an individual who was known to law enforcement as being under

ORDER DENYING MOTION TO SUPPRESS ~ 11

1   *Terry* frisk was unjustified at its inception because Sergeant Bernaiche did not report

2   any specific or articulable facts that Defendant was armed. ECF No. 41 at 20.

3   Second, Defendant claims that Sergeant Bernaiche exceeded the scope of a legal

4   *Terry* frisk by intruding beyond his outer clothing to remove the fanny pack. *Id.* at

5   21. Third, Defendant argues that Sergeant Bernaiche's warrantless seizure of the

6   fanny pack was unlawful because Sergeant Bernaiche did not have reasonable

7   suspicion that it contained weapons, evidence, or anything else that would have

8   justified its temporary detention. *Id.* at 22.

9         All three of Defendant's arguments lack merit. As a preliminary matter,

10  Sergeant Bernaiche's *Terry* frisk was justified because Officer Ruiz had a reasonable,

11  articulable suspicion that Defendant was armed and dangerous, and therefore

12  Sergeant Bernaiche did as well. *See United States v. Hall*, 974 F.2d 1201, 1204 (9th

13  Cir. 1992) (stating that to determine the existence of reasonable suspicion, "the court

14  must consider the totality of the circumstances" including "the collective knowledge

15  of the officers involved, and the inferences reached by experienced, trained

16  officers.") (quoting *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). Officer Ruiz

17  reported that Defendant attempted to exit the stolen vehicle as if he intended to flee.

18  ECF No. 41-1 at 4. Officer Ruiz also observed that Defendant made movements near

19

---

20  current DOC supervision was one factor that was considered by law enforcement
21  during the *Terry* stop. *See* ECF No. 41-1 at 4.

ORDER DENYING MOTION TO SUPPRESS ~ 12

his waist area after Officer Ruiz drew his service pistol, causing Officer Ruiz to fear that Defendant was reaching for an unknown weapon. *See id.* Based on these circumstances, Officer Ruiz, and by extension Sergeant Bernaiche, had reasonable suspicion to believe Defendant posed a threat to their safety. Therefore, the *Terry* frisk was justified at inception.

Defendant's second and third arguments regarding the invalidity of the scope of the *Terry* frisk and the subsequent seizure of his fanny pack can be resolved under the balancing test the Supreme Court set out in *United States v. Place*, 462 U.S. 696 (1983). In that case, the Supreme Court held that "the principles of *Terry* and its progeny" permit the brief detainment of personal property on the basis of reasonable suspicion, provided that the detention "is properly limited in scope." *Id.* at 706. When deciding whether such a warrantless seizure is reasonable, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 703. "When the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests, the opposing law enforcement interests can support a seizure based on less than probable cause." *Id.*

Here, the Government had a strong interest in the safety of the investigating officers and other individuals present, including customers at the gas station, Chevron employees, and people in cars driving past the scene. As explained above, the officers had reasonable suspicion to believe that Defendant was armed and

ORDER DENYING MOTION TO SUPPRESS ~ 13

dangerous, and Sergeant Bernaiche testified that he removed Defendant's fanny pack to ensure that Defendant did not have access to any weapons that might have been inside. This important governmental interest in safety outweighs the minimally intrusive nature and extent of the seizure, as the fanny pack remained at the scene and was seized for approximately one hour before Defendant was arrested. *Cf. Place*, 462 U.S. at 710 (holding that seizure of defendant's luggage was unreasonable where officers transported the luggage to a different airport in a process that took 90 minutes). Accordingly, the removal and seizure of Defendant's fanny pack was reasonable.

**Officer Ruiz's First Search of the Fanny Pack**

Defendant argues, and the Court agrees, that Officer Ruiz's contact with the fanny pack when he moved its position on the patrol car amounted to a *Terry* search. Although Officer Ruiz testified that it was not his intent at the time to search or frisk the bag, the motivations of officers conducting a search generally are not relevant to a Fourth Amendment inquiry. *See Bond v. United States*, 529 U.S. 334, 338 n.2 (2000) (stating that "the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment").

Here, Officer Ruiz had sufficient contact with the fanny pack to feel what he believed to be a firearm inside. ECF No. 41-1 at 5. This contact of the fanny pack's exterior constituted a lawful *Terry* search. *See United States v. Garcia*, 909 F.2d 389, 390-92 (9th Cir. 1990) (validating an officer's patdown of the exterior of a fanny

pack sitting approximately three feet away from defendant because officers "had a right to examine a hiding-place where a weapon could be concealed that the suspect could reach if he broke away from the officers.") (citing *Michigan v. Long*, 463 U.S. 1032, 1049-52 (1983)).  Furthermore, the time between the fanny pack's seizure and Officer Ruiz's first search of the fanny pack does not render the search unreasonable, because the duration of the *Terry* stop was reasonable given the officers' diligence during a "swiftly developing situation," as previously discussed.  *See United States v. Sharpe*, 470 U.S. 675, 686 (1985).

**Officer Ruiz's Second Search of the Fanny Pack**

Officer Ruiz's second search of the fanny pack occurred approximately two minutes after Defendant's arrest.  *See* ECF No. 56, Officer Ruiz Video 2, at 6:45 – 9:20 (showing Defendant's arrest at the 6:45 mark and the search of the fanny pack beginning at the 9:20 mark).  Because Defendant's fanny pack had been lawfully seized and searched and remained in uninterrupted police custody, Officer Ruiz's second search was also lawful.  *United States v. Lustig*, 830 F.3d 1075, 1085 (9th Cir. 2016) (holding that a second warrantless search of a purse was fully authorized because "once an item 'has been lawfully seized and searched, subsequent searches of that item, so long as it remains in the legitimate uninterrupted possession of the police, may be conducted without a warrant.'") (quoting *United States v. Burnette*, 698 F.2d 1038, 1049 (9th Cir. 1983)).

/ / /

ORDER DENYING MOTION TO SUPPRESS ~ 15

**Probable Cause**

Having found that the first search of Defendant's fanny pack was lawful under *Terry* and that the subsequent search of Defendant's fanny pack was lawful under *Burnette*, the Court proceeds to analyze whether there was probable cause for Defendant's arrest to determine the lawfulness of the search incident to arrest of Defendant's person.

The totality of the circumstances demonstrate that Officer Ruiz had probable cause to arrest Defendant for possession of a stolen vehicle. When Officer Ruiz first made contact with the stolen vehicle, Defendant was inside. ECF No. 41-4 at 3. Officer Ruiz testified that he believed Defendant had knowledge that the vehicle was stolen based on Defendant's interaction with the other suspect at the time of Officer Ruiz's approach. Officer Ruiz stated that it appeared Defendant was attempting to open the vehicle's door to flee and that he was trying to hide his appearance by covering his face with the hood of his jacket, which further indicated to Officer Ruiz that Defendant was aware that the vehicle was stolen. Additionally, Defendant gave vague statements to Sergeant Bernaiche regarding Defendant's relationship to the other driver and his reason for coming to that particular Chevron station, which Sergeant Bernaiche reported that he did not believe. *See* ECF No. 41-4 at 2. Finally, the incident occurred late at night in a known high-crime area where Officer Ruiz previously had recovered stolen vehicles. In light of these circumstances, there was probable cause to arrest Defendant for possession of a stolen vehicle.

ORDER DENYING MOTION TO SUPPRESS ~ 16

In the alternative, for the foregoing reasons, there was probable cause to arrest Defendant for taking a motor vehicle without permission. *See* Wash. Rev. Code § 9A.56.075(1) (stating that a person is guilty of taking a motor vehicle without permission in the second degree if "he or she voluntarily rides in or upon the automobile or motor vehicle with knowledge of the fact that the automobile or motor vehicle was unlawfully taken."); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 584 n.2 (2018) ("Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking.").

**Search Incident to Arrest of Defendant's Person**

Because officers had probable cause to arrest Defendant, the subsequent search incident to lawful arrest of Defendant's person was valid. *See United States v. Williams*, 846 F.3d 303 (9th Cir. 2016) (holding that officers had probable cause to arrest the defendant and thus performed a valid search incident to arrest of the defendant's person, which lawfully extended to the insides of the defendant's pockets).

**Inevitable Discovery**

The searches of Defendant's fanny pack and person were lawful, and the totality of the circumstances provided sufficient information to lead a reasonable person to believe that Defendant had committed or was committing a crime. It is unnecessary, therefore, to determine whether discovery of the evidence gathered from

ORDER DENYING MOTION TO SUPPRESS ~ 17

Defendant's fanny pack and person was inevitable. Nevertheless, the Court proceeds to analyze whether the inevitable discovery doctrine applies in the alternative.

The inevitable discovery doctrine applies when "the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching." *Nix v. Williams*, 467 U.S. 431, 447-48 (1984). The prosecution must establish by a preponderance of the evidence that the evidence ultimately or inevitably would have been discovered by lawful means. *Id.* at 444. An inventory search conducted according to standard agency procedure is one such example. *United States v. Mancera-Londono*, 912 F.2d 373, 375 (9th Cir. 1990).

In this case, assuming *arguendo* that the searches of the fanny pack and Defendant's person were improper, the Court finds that the evidence recovered from those searches still should not be suppressed. As discussed, Officer Ruiz had sufficient probable cause to arrest Defendant for possession of a stolen motor vehicle or taking motor vehicle without permission. Moreover, Defendant also would have been booked into jail for violations of his community custody conditions, as DOC Supervisor Tim Logan approved a detainer and indicated that a warrant for Defendant would be sent to the jail. *See* ECF No. 41-1 at 5. Officer Ruiz testified that law enforcement conducts a search of an individual's person when the individual is booked into jail pursuant to standard procedure. Officer Ruiz further testified that

ORDER DENYING MOTION TO SUPPRESS ~ 18

1 law enforcement subsequently conducts an inventory search of that individual's personal effects.

Therefore, the Court finds by a preponderance of the evidence that because law enforcement had probable cause to arrest Defendant, or in the alternative because Defendant would have been arrested for violations of his community custody conditions, the evidence in the fanny pack and on Defendant's person would have been inevitably discovered pursuant to an inventory search upon Defendant's booking into jail.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress, **ECF No. 41**, is **DENIED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** July 10, 2023.

          *s/ Rosanna Malouf Peterson*
          ROSANNA MALOUF PETERSON
          Senior United States District Judge